## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-22433-JEM-JB

**FLOR MORERA LOPEZ**,
and **ASBERT ANAZCO**,
individually and as personal representatives of
the Estate of Asbert E. Anazco,

      Plaintiffs,

vs.

**ZOLL SERVICES, LLC**,
**ZOLL MEDICAL CORP.**,
and **ZOLL MANUFACTURING CORP**,

      Defendants,

_____/

## AMENDED COMPLAINT

Plaintiffs, Flor Morera Lopez ("Lopez") and Asbert Anazco ("Asbert") ("Plaintiffs"), individually and as personal representatives of the Estate of Asbert E. Anazco ("Anazco"), through undersigned counsel, sue Defendants Zoll Services, LLC ("Zoll Services"), Zoll Medical Corporation ("Zoll Medical") and Zoll Manufacturing Corp ("Zoll Manufacturing") ("Zoll Defendants"), and allege:

## SUMMARY OF ACTION

1.     This matter is the result of the Zoll Defendants' LifeVest device's failure to work as intended – that is, to administer a required treatment shock for a patient in sudden cardiac arrest.

2.     More specifically, the LifeVest that Anazco was provided by the Zoll Defendants was programed to administer a treatment shock if he experienced ventricular tachycardia or ventricular fibrillation ("Defibrillation Events").

**HERNANDEZ LEE MARTINEZ, LLC**

3.      On July 8, 2020, Anazco experienced Defibrillation Events, which the LifeVest was programmed to detect and treat via a defibrillation shock.  The LifeVest detected the Defibrillation Events, but failed to treat them, resulting in Anazco's death.

## PARTIES, JURISDICTION AND VENUE

4.      This is a civil action for monetary damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs, and attorney's fees.

5.      Plaintiff Lopez, the surviving spouse of Anazco, is an individual over the age of eighteen, domiciled in Miami, Florida, and is otherwise *sui juris*.

6.      Plaintiff Asbert, the surviving minor child of Anazco, is an individual, who is between the age of eighteen and twenty-five, domiciled in Miami, Florida, and is otherwise *sui juris*.

7.      Defendant Zoll Services is a foreign limited liability company operating, conducting, engaging in, carrying on a business in, and causing an injury in, Florida, including in Miami-Dade County, Florida.  All members of Zoll Services are non-Florida persons or entities domiciled and with their principal places of business outside of Florida.

8.      Defendant Zoll Medical is a foreign corporation with its principal place of business outside of Florida, operating, conducting, engaging in, carrying on a business in, and causing an injury in, Florida, including in Miami-Dade County, Florida.

9.      Defendant Zoll Manufacturing is a foreign corporation with its principal place of business outside of Florida, operating, conducting, engaging in, carrying on a business in, and causing an injury in, Florida, including in Miami-Dade County, Florida.

10.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332.

**HERNANDEZ LEE MARTINEZ, LLC**

11.    Venue is this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this lawsuit, and the resulting injuries suffered, occurred in Miami-Dade County, Florida.

12.    Plaintiffs have complied with all conditions precedent to pursuing this action or said conditions have been waived or have otherwise occurred.

## FACTUAL ALLEGATIONS

### A.    THE LIFEVEST

13.    Zoll Manufacturing manufactures, repairs, and services the LifeVest devices. Zoll Manufacturing sells the devices to Zoll Medical, a related entity that has the devices shipped to Zoll Services, another related entity that places the devices on patients for use.  Plaintiffs sue each of the Zoll Defendants for their respective failures that led to supplying Anazco with a LifeVest device that detected but failed to treat Anazco's Defibrillation Events.

14.    The LifeVest is a wearable cardiac defibrillator that is worn by patients at risk for sudden cardiac arrest.  The LifeVest is designed to continuously monitor a patient's heart, and if needed, deliver electrical treatment shocks to the patient after Defibrillation Events are detected. In particular, prior to delivering a treatment shock to a patient, the LifeVest is designed to sound an alarm to verify that the patient is nonresponsive.  If a patient is responsive, the patient can press buttons on the LifeVest's monitor to stop the treatment sequence.  If a patient does not respond, the LifeVest warns bystanders that a treatment shock is about to be administered and to stand clear.  If a patient's Defibrillation Events continue without the patient responding, the LifeVest is designed to deliver a treatment shock to the patient through its therapy electrodes. If the patient's heartbeat normalizes, the alarm stops and the LifeVest returns to monitoring the patient's heart.  However, if the patient's heartbeat does not normalize, the LifeVest is designed to repeat the treatment sequence.

**HERNANDEZ LEE MARTINEZ, LLC**

15.     The LifeVest is not designed to be a patient's permanent treatment plan, but is to temporarily protect at-risk patients until a long-term plan is implemented.   Thereafter, Zoll Services collects each LifeVest and delivers it to Zoll Manufacturing, who is supposed to inspect, test, repair, refurbish, and otherwise service the LifeVest and its components to ensure proper functioning before a LifeVest is distributed to a new patient.

**B.     THE FAILURE OF ANAZCO'S DEVICE**

16.     On July 8, 2020, Anazco was wearing a LifeVest device as instructed by Zoll Services, at which time he experienced Defibrillation Events that required treatment.

17.     Unfortunately for Anazco and his family who had to witness his death, the LifeVest did not work as intended in that the device detected, but repeatedly failed to treat Anazco's Defibrillation Events.  In fact, the device repeatedly warned that a treatment would be administered, but failed to administer any treatment.

**C.     MANUFACTURING DEFECT WITH THE LIFEVEST**

18.     The LifeVest that Zoll Services provided to Anazco had a manufacturing defect, which caused the LifeVest to detect, but fail to treat, Anazco's Defibrillation Events.

19.     The manufacturing defect with the subject device was the direct result of Zoll Manufacturing's failure to comply with (1) the premarket approval ("PMA") rules and regulations and (2) the current good manufacturing practice ("CGMP") regulations.

**a)     PMA Rules and Regulations**

20.     The LifeVest, a Class III medical device under the purview of the United States Food and Drug Administration ("FDA"), has been subjected to the FDA's premarket approval process, and as a result, every LifeVest device must be manufactured and distributed so that it conforms to the design specifications and requirements that the FDA approved in the PMA process and subsequent supplementations.

**HERNANDEZ LEE MARTINEZ, LLC**

21.     Due to Zoll Manufacturing's faulty manufacturing, inspection, testing, repair, refurbishment, and service of the subject LifeVest and its components before Zoll Medical distributed it via Zoll Services to be placed on Anazco, the device did not conform to the design specifications and requirements that the FDA approved during the PMA process and subsequent supplementations, in that it was able to detect, but not treat, the Defibrillation Events that Anazco experienced.

**b)  CGMP Regulations**

22.     In addition, LifeVest devices must be manufactured pursuant to the CGMP regulations.

23.     For example, 21 CFR 820.20 mandates, but the management with executive responsibility of Zoll Manufacturing failed to, review the suitability and effectiveness of the quality system, as required to ensure satisfaction of the CGMP regulatory requirements, as well as internal quality policy and objectives, resulting in a failure to ascertain and address the subject LifeVest's inability to treat, despite detecting, Anazco's Defibrillation Events.

24.     21 CFR 820.70 mandates, but Zoll Manufacturing failed to develop, conduct, control, and monitor production processes to ensure that the subject LifeVest conformed to its specifications.

25.     21 CFR 820.75 mandates, but Zoll Manufacturing failed to, *inter alia*, implement acceptable process validation processes and procedures, and to ensure that validated processes were performed by qualified personnel, resulting in a failure to ascertain and address the subject LifeVest's inability to treat, despite detecting, Anazco's Defibrillation Events.

26.     21 CFR 820.100 mandates, but Zoll Manufacturing failed to, establish and maintain procedures for implementing corrective and preventive action, resulting in a failure to

ascertain and address the subject LifeVest's inability to treat, despite detecting, Anazco's Defibrillation Events. Specifically, Zoll Manufacturing failed to, *inter alia*, establish and maintain procedures for (1) analyzing processes, work operations, quality records, and other information to identify existing and potential causes of nonconforming product, (2) investigating the cause of nonconformities, (3) identifying actions needed to correct and prevent recurrence of nonconforming product, (4) verifying and validating corrective and preventive actions to ensure effectiveness, (5) implementing and recording changes in methods and procedures needed to correct and prevent identified quality problems, (6) ensuring that information related to quality problems or nonconforming product was disseminated to those directly responsible for assuring the quality of such product or the prevention of such problems, and (7) submitting relevant information on identified quality problems, as well as corrective and preventative actions, for management review.

27.     21 CFR 820.198 mandates, but Zoll Manufacturing failed to, establish procedures for reviewing and evaluating complaints about the types of failures that occurred with the subject LifeVest, including investigating the types of failures that occurred with the subject LifeVest.

28.     Zoll Manufacturing's failure to comply with the above regulations existed when the subject LifeVest was manufactured and serviced.

29.     Moreover, the regulatory failures resulted in an inability to ascertain that the subject LifeVest was manufactured, serviced, and delivered to Anazco with nonconformities that prevented it from treating, despite detecting, his Defibrillation Events.

-6-
HERNANDEZ LEE MARTINEZ, LLC

**D.**     **MISREPRESENTATION AND MARKETING STATEMENT**

30.     Zoll Manufacturing, Zoll Medical, and Zoll Services make certain statements in order to promote the LifeVest and convince patients, and Anazco in this case, to use the LifeVest.

31.     Particularly, on or about May 28, 2020, acting on behalf of Zoll Services, Zoll Medical, and Zoll Manufacturing, Raquel Diaz met with Anazco and Lopez in Miami, Florida, and verbally informed, and provided written materials informing, that upon an alarm after detection of Defibrillation Events, "if you do not press the LifeVest's response buttons, the device will determine you are unconscious and *will* deliver the treatment shock" ("Marketing Statement").  Zoll Manufacturing, Zoll Medical, and Zoll Services make the same assurance via their website.

32.     Anazco and Lopez, relying on the Marketing Statement, agreed to allow Anazco to be fitted with the subject LifeVest device.

33.     Zoll Manufacturing, Zoll Medical, and Zoll Services knew or should have known the Marketing Statement was false.

34.     Specifically, Zoll Manufacturing, Zoll Medical, and Zoll Services knew or should have known there have been numerous instances where a LifeVest issued an alarm but failed to deliver needed treatment despite the response buttons not being pressed.

35.     Notably, had they known the Marketing Statement was false, Anazco and Lopez would not have agreed to allow the subject LifeVest to be placed on Anazco as they did.

**COUNT 1**
**STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT**
**(AGAINST ZOLL MANUFACTURING)**

36.     Plaintiffs incorporate paragraphs 1 through 29 as though fully set forth herein.

37.     On or before May 2020, Zoll Manufacturing manufactured and placed into commerce the subject LifeVest that was worn by Anazco when he experienced Defibrillation Events that were not treated by the LifeVest device.

38.     The subject LifeVest reached Anazco in the same manner it was placed into commerce by Zoll Manufacturing and was not modified or changed before, during and after the time it was placed on and worn by Anazco.

39.     The subject LifeVest was defective and unreasonably dangerous as a result of a manufacturing defect.   Specifically, the subject LifeVest was defective and unreasonably dangerous in that it detected but failed to treat the Defibrillation Events experienced by Anazco on July 8, 2020.

40.     The manufacturing defect was the direct result of Zoll Manufacturing's failure to comply with the (1) PMA rules and regulations, and (2) CGMP regulations noted above for manufacturing LifeVest devices, including the subject device, and for detecting and fixing manufacturing defects with LifeVest devices before placing them into the stream of commerce and with patients.

41.     As a result of the manufacturing defect with the subject LifeVest, Anazco experienced untreated Defibrillation Events and died.   Anazco's death was the direct and proximate result of the manufacturing defect with the subject LifeVest.

42.     Further, as a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Manufacturing and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

**COUNT 2**
**STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT**
**(AGAINST ZOLL MEDICAL AND ZOLL SERVICES)**

43.     Plaintiffs incorporate paragraphs 1 through 29 as though fully set forth herein.

44.     On or before May 2020, Zoll Medical purchased from Zoll Manufacturing, and shipped to Zoll Services, the subject LifeVest that was worn by Anazco when he experienced Defibrillation Events that were not treated by the LifeVest device.

45.     The subject LifeVest reached Anazco in the same manner it was placed into commerce by Zoll Medical and Zoll Services and was not modified or changed before, during and after the time it was placed by Zoll Services directly on and worn by Anazco.

46.     The subject LifeVest was defective and unreasonably dangerous as a result of a manufacturing defect.   Specifically, the subject LifeVest was defective and unreasonably dangerous in that it detected but failed to treat the Defibrillation Events experienced by Anazco on July 8, 2020.

47.     The manufacturing defect was the direct result of Zoll Manufacturing's failure to comply with the (1) PMA rules and regulations, and (2) CGMP regulations noted above for manufacturing LifeVest devices, including the subject device, and for detecting and fixing manufacturing defects with LifeVest devices before placing them into the stream of commerce and with patients.

**HERNANDEZ LEE MARTINEZ, LLC**

48.     As a result of Zoll Medical and Zoll Services distributing to, and placing on, Anazco the subject LifeVest with a manufacturing defect, Anazco experienced untreated Defibrillation Events and died.   Anazco's death was the direct and proximate result of the manufacturing defect with the subject LifeVest, and the subsequent distribution and placement of the device on him by Zoll Medical and Zoll Services.

49.     Further, as a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Medical and Zoll Services and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

### COUNT 3
### NEGLIGENT MANUFACTURING
### (AGAINST ZOLL MANUFACTURING)

50.     Plaintiffs incorporate paragraphs 1 through 29 as though fully set forth herein.

51.     On or before May 2020, Zoll Manufacturing manufactured and placed into commerce the subject LifeVest that was worn by Anazco when he experienced Defibrillation Events that were not treated by the LifeVest device.

52.     The subject LifeVest reached Anazco in the same manner it was placed into commerce by Zoll Manufacturing and was not modified or changed before, during and after the time it was placed on and worn by Anazco.

53.     Zoll Manufacturing negligently manufactured the subject LifeVest. More specifically, Zoll Manufacturing manufactured the subject LifeVest in violation of the (1) PMA rules and regulations, and (2) CGMP regulations noted above, which violations resulted in the subject LifeVest being manufactured with a defect that caused it to detect but fail to treat the Defibrillation Events experienced by Anazco on July 8, 2020.

54.     As a result of the manufacturing defect with the subject LifeVest, Anazco experienced untreated Defibrillation Events and died.  Anazco's death was the direct and proximate result of the negligent manufacturing defect with the subject LifeVest.

55.     Further, as a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Manufacturing and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

## COUNT 4
## NEGLIGENT MANUFACTURING
### (AGAINST ZOLL MEDICAL AND ZOLL SERVICES)

56.     Plaintiffs incorporate paragraphs 1 through 29 as though fully set forth herein.

57.     On or before May 2020, Zoll Medical purchased from Zoll Manufacturing, and shipped to Zoll Services, the subject LifeVest that was worn by Anazco when he experienced Defibrillation Events that were not treated by the LifeVest device.

**HERNANDEZ LEE MARTINEZ, LLC**

58.     The subject LifeVest reached Anazco in the same manner it was placed into commerce by Zoll Medical and Zoll Services and was not modified or changed before, during and after the time it was placed by Zoll Services directly on and worn by Anazco.

59.     The subject LifeVest was defective and unreasonably dangerous as a result of a manufacturing defect.   Specifically, the subject LifeVest was defective and unreasonably dangerous in that it detected but failed to treat the Defibrillation Events experienced by Anazco on July 8, 2020.

60.     The manufacturing defect was the direct result of Zoll Manufacturing's failure to comply with the (1) PMA rules and regulations, and (2) CGMP regulations noted above for manufacturing LifeVest devices, including the subject device, and for detecting and fixing manufacturing defects with LifeVest devices before placing them into the stream of commerce and with patients.

61.     As a result of Zoll Medical and Zoll Services distributing to, and placing on, Anazco the subject LifeVest with a manufacturing defect, Anazco experienced untreated Defibrillation Events and died.   Anazco's death was the direct and proximate result of the manufacturing defect with the subject LifeVest, and the subsequent distribution and placement of the device on him by Zoll Medical and Zoll Services.

62.     Further, as a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Medical and Zoll Services and award them the economic and non-economic

damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

**COUNT 5**
**NEGLIGENCE**
**(AGAINST ZOLL MANUFACTURING, ZOLL MEDICAL, AND ZOLL SERVICES)**

63.    Plaintiffs incorporate paragraphs 1 through 17 as though fully set forth herein.

64.    On or before May 2020, Zoll Medical purchased from Zoll Manufacturing, and shipped to Zoll Services, the subject LifeVest that was worn by Anazco when he experienced Defibrillation Events that were not treated by the LifeVest device.

65.    Irrespective of a defect during the manufacturing of the LifeVest, after the LifeVest was placed on Anazco, Zoll Manufacturing, Zoll Medical, and Zoll Services, acting through technical service personnel, undertook to replace the LifeVest if faults with the device were detected.  Zoll Manufacturing, Zoll Medical, and Zoll Services failed to exercise reasonable care in these undertakings, resulting in Anazco's death.

66.    More specifically, after the LifeVest was placed on Anazco, technical service personnel reviewed the LifeVest's downloaded data, failing to note that the LifeVest had registered flags corresponding to Zoll service codes indicating the LifeVest had experienced conditions sufficient to impair the device's life-saving operations and needed to be replaced.

67.    In fact, the LifeVest registered multiple instances of the subject flags, and although this information was available to Zoll Manufacturing, Zoll Medical, and Zoll Services, they failed to note any issue until on or about June 30, 2020, when technical service personnel internally acknowledged that the LifeVest's monitor needed to be replaced.

68.    Despite acknowledging the need to replace, and undertaking to replace, Zoll Manufacturing, Zoll Medical, and Zoll Services did not replace Anazco's LifeVest device.

69.     On July 8, 2020, Anazco experienced Defibrillation Events that the LifeVest detected but did not treat due to faults with the device resulting in Anazco's death.

70.     Anazco's death was the direct and proximate result of Zoll Manufacturing, Zoll Medical, and Zoll Services' failure to exercise reasonable care in their undertakings, effecting Anazco's continued use of a LifeVest able to detect but not treat Defibrillation Events.

71.     As a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Manufacturing, Zoll Medical, and Zoll Services, and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

### COUNT 6
### FRAUDULENT REPRESENTATION
### (AGAINST ZOLL MANUFACTURING, ZOLL MEDICAL, AND ZOLL SERVICES)

72.     Plaintiffs incorporate paragraphs 1-17 and 30-35 as though fully set forth herein.

73.     On or about May 28, 2020, Zoll Manufacturing, Zoll Medical, and Zoll Services, via their representative, Raquel Diaz, made the Marketing Statement to Anazco and Lopez, which concerned material facts.

74.     Zoll Manufacturing, Zoll Medical, and Zoll Services knew that the Marketing Statement was false when made, or made the Marketing Statement knowing they did not know whether it was true or false.

75.     Zoll   Manufacturing,   Zoll   Medical,   and   Zoll   Services   made   the Marketing Statement intending to induce, and inducing Anazco to accept and wear the LifeVest instead   of   seeking   alternative   means   of   protection.     Anazco   and   Lopez   relied   on   the Marketing Statement when they decided to allow Anazco to accept and wear the subject LifeVest device instead of seeking alternative options to the LifeVest.

76.     As a direct and proximate result of relying on the Marketing Statement, Anazco accepted and wore a LifeVest that did not work as represented, resulting in his death.

77.     As a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Manufacturing, Zoll Medical, and Zoll Services, and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

## COUNT 7
## NEGLIGENT MISREPRESENTATION
### (AGAINST ZOLL MANUFACTURING, ZOLL MEDICAL, AND ZOLL SERVICES)

78.     Plaintiffs incorporate paragraphs 1-17 and 30-35 as though fully set forth herein.

79.     On or about May 28, 2020, Zoll Manufacturing, Zoll Medical, and Zoll Services, via their representative, Raquel Diaz, made the Marketing Statement to Anazco and Lopez, which concerned material facts.

80.     Zoll Manufacturing, Zoll Medical, and Zoll Services should have known that the Marketing Statement was false when made.

**HERNANDEZ LEE MARTINEZ, LLC**

81.     Zoll Manufacturing, Zoll Medical, and Zoll Services made the Marketing Statement intending to induce, and inducing Anazco to accept and wear the LifeVest instead of seeking alternative means of protection.  Anazco and Lopez justifiably relied on the Marketing Statement when they decided to allow Anazco to accept and wear the subject LifeVest device instead of seeking alternative options to the LifeVest.

82.     As a direct and proximate result of relying on the Marketing Statement, Anazco accepted and wore a LifeVest that did not work as represented, resulting in his death.

83.     As a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully requests the Court enter judgment in their favor and against Zoll Manufacturing, Zoll Medical, and Zoll Services, and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

**COUNT 8**
**FRAUDULENT MARKETING/PROMOTION**
**(FLA. STAT. 817.40(5) & 817.41(1))**
**(AGAINST ZOLL MANUFACTURING, ZOLL MEDICAL, AND ZOLL SERVICES)**

84.     Plaintiffs incorporate paragraphs 1-17 and 30-35 as though fully set forth herein.

85.     In marketing, promoting and convincing patients to use the LifeVest devices for financial gain, Zoll Manufacturing, Zoll Medical, and Zoll Services inform the public, including patients, of the Marketing Statement.

86.     On or about May 28, 2020, Zoll Manufacturing, Zoll Medical, and Zoll Services, via their representative, Raquel Diaz, made the Marketing Statement to Anazco and Lopez, which concerned material facts.

87.     Zoll Manufacturing, Zoll Medical, and Zoll Services knew or should have known that the Marketing Statement was false when made.

88.     Zoll Manufacturing, Zoll Medical, and Zoll Services made the Marketing Statement intending to induce, and inducing Anazco to accept and wear the LifeVest instead of seeking alternative means of protection.   Anazco and Lopez relied on the Marketing Statement when they decided to allow Anazco to accept and wear the subject LifeVest device instead of seeking alternative options to the LifeVest.

89.     As a direct and proximate result of relying on the Marketing Statement, Anazco accepted and wore a LifeVest that did not work as represented, resulting in his death.

90.     As a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Manufacturing, Zoll Medical, and Zoll Services, and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, reasonable attorney's fees and other damages allowed by section 817.41(6), Florida Statutes, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

**COUNT 9**
**BREACH OF EXPRESS WARRANTY**
**(AGAINST ZOLL MANUFACTURING, ZOLL MEDICAL, AND ZOLL SERVICES)**

91.     Plaintiffs incorporate paragraphs 1-17 and 30-35 as though fully set forth herein.

92.     A medical doctor prescribes the LifeVest.  However, after the LifeVest is prescribed, Zoll Services enters into a contract, on behalf of itself, Zoll Manufacturing and Zoll Medical, with the patient, pursuant to which the patient and/or the patient's insurance carrier is responsible for paying for the patient's use of the device.  Patients are obligated to pay amounts that are not covered by their insurance.

93.     Zoll Manufacturing, Zoll Medical, and Zoll Services entered into a contract with Anazco pursuant to which he and/or his insurance carrier was responsible for paying for Anazco's use of the device.  Anazco was obligated to pay amounts that were not covered by his insurance.

94.     In connection with placing the LifeVest directly with Anazco, on or about May 28, 2020, and via their representative Raquel Diaz, Zoll Manufacturing, Zoll Medical, and Zoll Services expressly warranted via the Marketing Statement that Anazco's LifeVest would deliver a needed treatment shock after detecting his Defibrillation Events, and warning that a treatment shock will be delivered, unless the device's response buttons were pressed before the shock was delivered.

95.     Anazco and Lopez relied on the conveyed express warranty when they decided to allow Anazco to accept and wear the subject LifeVest device instead of seeking alternative options to the LifeVest.

96.     As a direct and proximate result of relying on the express warranty conveyed via the Marketing Statement, Anazco accepted and wore a LifeVest that did not work as represented, resulting in his death.

97.     As a result of Anazco's death, Plaintiffs have and continue to suffer damages, including but not limited to damages for (1) loss of support and services, (2) loss of companionship and protection, (3) mental suffering, (4) medical and funeral expense, and (5) loss of net accumulation of Anazco's estate.

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and against Zoll Manufacturing, Zoll Medical, and Zoll Services, and award them the economic and non-economic damages they suffered and continue to suffer as a result of Anazco's death, costs in this action, pre and post judgment interest, as applicable, and such further relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

**HERNANDEZ LEE MARTINEZ, LLC**
*Counsel for Plaintiffs*
28 West Flagler Street
Suite 600, Miami, FL 33130
Phone: (305) 842-2100
Facsimile: (305) 842-2105

By:  ___s/  Jermaine A. Lee_____
      **Jermaine A. Lee, Esq.;**
      Florida Bar No.: 0850861
      jlee@hlmlegal.com
      **Eric A. Hernandez, Esq.;**
      Florida Bar No.: 340730
      eric@hlmlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 27, 2022, I electronically filed the foregoing with the Clerk of the Court via CM/ECF.  I also certify that the foregoing document is being served this day on all counsel or pro-se parties identified on the below service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Jermaine A. Lee

Loren W. Fender, Esq.
loren.fender@bowmanandbrooke.com
Bradley A. Shapiro, Esq.
bradley.shapiro@bowmanandbrooke.com
**BOWMAN AND BROOKE, LLP**
Two Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Phone: (305) 995-5600
Fax:    (305) 995-6090
*Counsel for Defendants*

Jodi Schebel, Esq.
jodi.schebel@bowmanandbrooke.com
**BOWMAN AND BROOKE, LLP**
41000 Woodward Ave., Suite 200 East
Bloomfield Hills, MI 48304
Phone: (248) 205-3300
Fax:    (248) 205-3399
*Counsel for Defendants*

Kim M. Schmid, Esq.
kim.schmid@bowmanandbrooke.com
**BOWMAN AND BROOKE, LLP**
150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Phone: (612) 339-8682
Fax:    (612) 672-3200
*Counsel for Defendants*